# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| LINDA M. JONES | * | CIVIL ACTION NO. 05-0454 |
| VERSUS | * | JUDGE MELANÇON |
| COMMISSIONER OF SOCIAL SECURITY | * | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Linda M. Jones, born September 18, 1957, filed an application for supplemental security income on April 16, 2002, alleging disability as of May 1, 1999, due to anxiety, depression, stomach and back problems, weakness, headaches, drowsiness, and pain. After the claim was denied, claimant requested a hearing before an Administrative Law Judge ("ALJ"). On June 24, 2003, the ALJ issued an unfavorable decision. (Tr. 34-40).

Claimant filed a Request for Review with the Appeals Council. By Order dated September 12, 2003, the Appeals Council vacated the hearing decision and remanded the case for further proceedings to include a new hearing and testimony by a vocational expert. (Tr. 41-43). After the hearing, the ALJ issued another unfavorable

decision. (Tr. 18-26). Following denial of review by the Appeals Council, claimant filed for judicial review with this Court.

FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Records from University Medical Center ("UMC") dated April 13, 2000 to July 16, 2002**. On May 9, 2001, claimant was admitted with complaints of decreased appetite and weight loss. (Tr. 162, 169). Chest x-rays were normal. (Tr. 163). A colonoscopy and esophagogastroduodenoscopy dated October 5, 2001, revealed chronic active gastritis. (Tr. 153-55).

On May 14, 2002, claimant complained of pain, erythema, and discharge from the left axillary area. (Tr. 131, 151). A Pollock procedure was performed on July 10, 2002. (Tr. 131). The diagnosis was hydradenitis supperativa of the left axilla. (Tr. 131, 135, 140).

**(2) Consultative Internal Medicine Examination by Dr. Kenneth Ritter dated July 23, 2002**.  Claimant complained of having chronic anxiety for years; nausea several times a week with weakness and stomach pain, relating to how often she took her medications; occasional low back pain; recent left axillary gland surgery; headaches twice weekly lasting 30 minutes at a time and relieved with Tylenol, drowsiness when taking medications, and "not very good" vision.  (Tr. 172).  Her medications included Tagamet, Ludiomil, Cephalexin, Nortiptyline, and Lorazepam. She stated that she took her medicines very irregularly because of their cost and side effects.

On examination, Dr. Ritter estimated that claimant's intelligence was below average.  She was 5 feet 2 inches tall and weighed 136 pounds.  (Tr. 173).  Her visual acuity without glasses was 20/30.  Her extremities were normal.  Neurologically, she was intact with normal DTRs, strength, and sensation.  (Tr. 174).

Dr. Ritter's impressions were a history of chronic anxiety and depression, for which claimant was currently taking several medications; complaints of episodic nausea, and ongoing heavy cigarette smoking.

In the Medical Assessment of Ability to do Work-Related Activities (Physical), Dr. Ritter determined that claimant's ability to lift/carry, stand/walk, and sit were not

affected by her impairment. (Tr. 177). She could frequently perform all postural activities.

**(3) Consultative Psychological Examination by Dr. Sandra Durdin dated July 23, 2002**. Claimant complained of anxiety and depression, stomach and back problems, weakness, infection, surgery, headaches, drowsiness, and pain. (Tr. 179). On examination, claimant's mood was anxious to a moderate degree with normal affect, and a personable and socially appropriate manner. She was alert and fully oriented, without evidence of hallucinations or delusions. She denied suicidal and homicidal ideation, as well as substance abuse. Her insight and judgment were intact. Dr. Durdin estimated that claimant's intelligence was low average.

Claimant reported that she had overdosed on Ludiomil and was taken to the hospital. (Tr. 180). She stated that she had missed an appointment at University Medical Center's psych department. She had never had any inpatient psychiatric care. She said that she smoked one pack of cigarettes per day, but had stopped drinking in 2001. Her medications included Cephalexin, Ludiomil, Lorezepam, Tagamet, Cimetidine, and Nortriptyline.

Dr. Durdin estimated that claimant had low average intelligence with adequate reading and math skills for daily living management of affairs. She noted that claimant had chronic depression and anxiety, somaticized under stress, and generally

coped poorly with stress. She was not psychotic, and was capable of sustaining attention for simple tasks. She had quit all jobs due to physical not mental complaints. She had dependent personality features.

Dr. Durdin further noted that claimant was not in the mental health system and was not really taking antidepressants except for sleep purposes. She could perform simple tasks. However, Dr. Durdin opined that claimant's stress tolerance was likely to be poor, and that she was likely to maintain a pattern of leaving jobs due to physical complaints.

The diagnostic impression was generalized anxiety disorder, moderate; dysthymia, and dependent personality features.

**(4) Report from Dr. George D. Sagrera dated August 1, 2002**. Dr. Sagrera reported that claimant had been cared for him by many years. (Tr. 182). He noted that she had had some anxiety and depression, and been on SSR drugs and tricyclic anti-depressants. He stated that she had had numerous episodes of infected sebaceous cyst of her right ear, arms, etc.

Dr. Sagrera reported that he had last seen claimant on April 26, 2002, for an adenitis of the left anxilla which had become chronic. He noted that she was having rather severe anxiety related to the discomfort of this abscess under her arm at that time.

**(5) Psychiatric Review Technique Form dated August 20, 2002**.  Dr. R. H. Rolston assessed claimant for dysthymia, generalized anxiety disorder, somatoform disorders, and dependent personality disorder.  (Tr. 184).  He found that she had moderate restriction as to activities of daily living.  (Tr. 194).  He also determined that she had mild limitations as to difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace.  He opined that her statements about her mental condition were not fully credible.  (Tr. 196).

**(6) Mental Residual Functional Capacity ("RFC") Assessment dated August 20, 2002**.  Dr. Rolston determined that claimant was moderately limited as to her ability to understand, remember, and carry out detailed instructions; to maintain attention and concentration for extended periods; to accept instructions and respond appropriately to criticism from supervisors; to respond appropriately to changes in the work setting, and to set realistic goals or make plans independently of others.  (Tr. 198-99).  She was not significantly limited in any other areas.  Dr. Rolston found that claimant could perform simple tasks.  (Tr. 200).

**(7) Records from Dr. George Sagrera dated August 16, 2002 to January 14, 2004**.  In 2002 and 2003, Dr. Sagrera treated claimant for insomnia and shaking hands, depression, decreased appetite, weight loss, a pulled muscle to the back, boils, and a sinus infection.  (Tr. 203-04).

On January 14, 2004, Dr. Sagrera stated that claimant had hypermenorrhea and dysmenorrhea with subsequent pelvic pain and anemia. (Tr. 205). He noted that she had a fairly large uterine fibroid and needed a hysterectomy.

**(8) Records from UMC dated July 25, 2002 to January 13, 2004**. On July 10, 2003, claimant's left axilla had healed. (Tr. 216). She also complained of low back pain. Lumbar spine x-rays taken on September 30, 2003, were unremarkable. (Tr. 213).

On December 15, 2003, claimant complained of excessive vaginal bleeding. (Tr. 207). The assessment was uterine fibroid and anxiety. On January 13, 2004, claimant stated that Dr. Sagrera had referred her to UMC for gynecological surgery because she had no payment source. (Tr. 206). There are no records as to whether surgery was performed.

**(9) Records from New Iberia Addictive Disorder Clinic dated December 11, 2003 to May 5, 2004**. Claimant was admitted on December 11, 2003, for evaluation of chemical dependency. (Tr. 225). She reported that she had first tried alcohol at age 17. (Tr. 226). She said that she had been treated for drug abuse on one occasion. She reported drinking two to three times a week to intoxication and smoking marijuana intermittently for the past year. (Tr. 227).

During the previous 30 days, claimant reported having serious depression; serious anxiety or tension; trouble understanding, concentrating, or remembering, and trouble controlling violent behavior. (Tr. 228). She presented as being down and having depression much of the time. (Tr. 230). The interviewer opined that claimant "portrays herself as sicker then [sic] she might be." It was further noted that "I do believe they [sic] may be some depression but enough to make her not to be able to work is questionable."

The assessment was major depressive episode and alcohol dependency. (Tr. 224). It was recommended that claimant stop drinking, followup with her family doctor about medications, and attend a bimonthly female support group. (Tr. 230). From January 13, 2004 through May 5, 2004, her medications included Remeron, Trazodone, Elavil, and Etrafon. (Tr. 221-23). On May 5, 2004, claimant was referred to New Iberia Mental Health for ongoing treatment and medication management. (Tr. 221).

**(10) Psychological Report from David E. Greenway, Ph.D., dated August 9, 2004.**[1] Claimant was referred by New Iberia Addictive Disorders Clinic for psychological evaluation for personality and intellectual assessment, diagnostic and treatment recommendations. (Tr. 240). On interview, there was moderate evidence

---

[1]This report was submitted to the Appeals Council.

of exaggeration. While she reported being depressed, she had no indication of depressive symptoms on interviewing.

On examination, claimant's verbal behavior was slightly disorganized, and she appeared confused or dazed at times. (Tr. 241). Her affective expression was composed with little variability. Her cognition was simple and concrete. Her insight, judgment, and eye contact were poor. Her social skills were limited.

Focused attention and sustained concentration were just within the lower bounds of normal limits. Recent and remote memory were intact. Behavioral pace was even with consistent effort and rate of performance. Persistence at evaluative tasks was adequate.

Shipley testing revealed an IQ score in the mildly mentally retarded range on intellectual functioning. The MMPI and MCMI showed that claimant was functionally illiterate. The personality profiles were invalid due to exaggeration of symptoms. Dr. Green way determined that "[p]ossible causes of this could be low intellect, florid psychosis or deliberate malingering."

Claimant's diagnoses were alcohol and cannabis abuse, in partial remission; borderline intellectual functioning, and psychosocial, educational, occupational, and economic problems. Her global assessment of functioning score was 65 over the previous year.

Dr. Greenway concluded that testing had indicated an IQ in the mildly mentally retarded range of functioning, but interviewing had suggested somewhat higher adaptive skills. He opined that she might more appropriately be considered to have borderline intellectual functioning. He noted that her low intellect might explain some of her neurotic feelings. He concluded that she should be urged to attend AA and continue in aftercare. Claimant's prognosis was guarded.

**(11) Claimant's Administrative Hearing Testimony**. The purpose of the hearing on February 11, 2004, was to obtain vocational testimony in response to the Appeals Council's order of remand. (Tr. 41-43). Claimant testified that since the previous hearing on June 16, 2003, she had tried babysitting at home, but could not do it. (Tr. 270). She stated that she had problems with her ulcer and bad nerves.

**(12) Administrative Hearing Testimony of Thomas LaFosse, Vocational Expert ("VE")**. Mr. LaFosse described claimant's past work as a child monitor as medium and semi-skilled. (Tr. 272). The ALJ posed a hypothetical in which he asked the VE to assume a younger claimant with a limited education and the same work experience; who had no exertional limitations; and who was moderately restricted as to daily activities, mildly restricted as to social functioning, and mildly restricted as to difficulties in maintaining concentration, persistence, or pace. (Tr. 272-73). In response, Mr. LaFosse testified that claimant could perform her past

work as a child care monitor. (Tr. 273). Under questioning, claimant then clarified that she missed 10 days out of a month when she babysat, which the ALJ concluded was not past relevant work. (Tr. 275).

The ALJ then changed the hypothetical to assume a claimant with a tenth grade education who had the same residual functional capacity to perform work at a job requiring limited education. (Tr. 275). In response, the VE identified the jobs of hand packer or packager, of which there were 378,000 positions nationally; freight, stock, and material handler, of which there were 462,000 positions nationally, and stock handler and bagger, of which there were 1,139,000 positions nationally. (Tr. 275-76).

When claimant's attorney imposed an exertional limitation of moderate work or less, Mr. LaFosse responded that there would still be over a million jobs with SVPs of 1 or 2 requiring a limited education. (Tr. 276-77). Next, clamant's attorney asked whether those jobs in the light and sedentary category could still be performed in significant numbers if there were moderate limitations as described in Dr. Ralston's report, including moderate limitations of ability to take criticism, remember and carry out detailed instructions, respond appropriately to changes in the work setting, set realistic goals in the work place, and a mild limitation on the ability to maintain concentration, persistence, and pace over extended periods of time. (Tr. 277-78). In

response, Mr. LaFosse testified that those limitations would not affect the numbers. (Tr. 278). When the attorney changed the limitations to marked, Mr. LaFosse stated that such limitations would seriously erode the job base. (Tr. 278-79).

**(13) The ALJ's findings are entitled to deference**. Claimant argues that: (1) the ALJ erred in positing a defective hypothetical question to the vocational expert and applying Grid Rule 204.00 to deny benefits; (2) the ALJ improperly applied the Medical-Vocational Guidelines as a framework for the decision-making, and (3) the ALJ failed to fully and fairly develop the facts.

As to the first argument, claimant argues that the ALJ erred in positing a defective hypothetical to the VE because it did not contain any of claimant's recognized impairments. (rec. doc. 14, p. 1). The ALJ found that claimant had impairments of affective disorder (dysthymia), anxiety-related disorder (generalized anxiety disorder), and a personality disorder (dependent personality features), which impairments were severe, but not severe enough to meet or medically equal the listings. (Tr. 23). In formulating his hypotheticals to the vocational expert, the ALJ incorporated the limitations relating to these disorders found in Dr. Ralston's report, including moderate restriction as to daily activities, mild restriction as to social functioning, and mild restriction as to difficulties in maintaining concentration, persistence, or pace. (Tr. 194, 272-73).

In her reply brief, claimant argues that the Fifth Circuit mandates that the ALJ posit a hypothetical which accurately reflects all of plaintiff's recognized impairments, citing *Boyd v. Apfel*, 239 F.3d 698 (5th Cir. 2001), and *Bowling v. Shalala*, 36 F.3d 431 (5th Cir. 1994). (rec. doc. 14, p. 1). In *Bowling*, the court held that "[u]nless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, *and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions* (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question), a determination of non-disability based on such a defective question cannot stand." (emphasis added). *Bowling*, 36 F.3d at 436.

In the response, defendant argues that "[w]hile the ALJ arguably did not ask a completely accurate hypothetical question (Tr. 273, 275), Plaintiff's counsel plainly did." (rec. doc. 11, p. 5). Claimant argues that defendant's assertion "fails to salvage" the ALJ's defective hypothetical question. (rec. doc. 14, p. 2). However, in citing *Boyd* and *Bowling*, claimant omits an important part of these holdings – namely, that claimant's counsel was afforded an opportunity to correct any perceived deficiencies in the ALJ's hypothetical.

In *Wise v. Barnhart*, 101 Fed.Appx. 950 (5th Cir. June 18, 2004), an unpublished decision from this Circuit, the identical issue was presented. There, claimant Wise argued that the ALJ's hypothetical question to the vocational expert failed to incorporate the disabilities recognized by the ALJ. In that case, Wise's representative was allowed to cross-examine the vocational expert regarding the ALJ's hypothetical. The court rejected Wise's challenge to the hypothetical, reasoning as follows: "even assuming, *arguendo*, that the administrative law judge's hypothetical was deficient in the respects urged on appeal, because Wise's representative was afforded an opportunity to correct any perceived deficiencies, there is no reversible error." *Id*. Such is the case here.

In any event, the record reflects that in formulating his hypothetical questions to the vocational expert, the ALJ incorporated the limitations found in Dr. Ralston's report. (Tr. 194, 272-73). Claimant's attorney had the opportunity to correct any alleged deficiencies in the hypotheticals and, in fact, did so. (Tr. 276-81). Accordingly, this argument lacks merit.

Next, claimant argues that the ALJ relied exclusively on Grid Rule 204.00 to deny her claim. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 204.00. (rec. doc. 8, pp. 7-8; rec. doc. 14, pp. 2-4). However, a review of the record reflects that the ALJ expressly based his holding on the testimony of the vocational expert, stating in the decision as

follows: "[*b*]*ased on the testimony of the vocational expert*, the undersigned concludes that considering the claimant's age, educational background, work experience, and residual functional capacity, she is capable of making a successful adjustment to work that exists in significant numbers in the national economy." (emphasis added). (Tr. 25). Thus, this argument also lacks merit.

Finally, claimant argues that the ALJ failed to fully and fairly develop the facts regarding her alleged mental retardation. (rec. doc. 8, p. 9; rec. doc. 14, pp. 5-6). She asserts that Dr. Ritter raised the "requisite suspicion" that psychological examination was warranted, but that neither the state agency nor the ALJ ordered such examination. (rec. doc. 8, p. 9).

In his report, Dr. Ritter estimated that claimant's intelligence was below average. (Tr. 172). However, he did not recommend that she undergo intelligence testing. (Tr. 172-74). Likewise, Dr. Durdin performed a psychological evaluation in which she estimated that claimant had low average intelligence. (Tr. 180). Nowhere did she suggest that claimant had mental retardation. In fact, she determined that claimant was capable of performing simple tasks.

It is well established that the ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). However, this rule

typically applies when claimant is not represented by counsel. In this case, the record reflects that claimant had counsel at the hearing.

In any event, even if claimant had not been represented, she must establish that she was prejudiced by the ALJ's failure to develop the record. *Id.*; *Gullett v. Chater*, 973 F.Supp. 614, 621 (E.D. Texas 1997). Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).

Here, claimant asserts that she secured additional WAIS-III testing from Dr. David Greenway which disclosed an IQ in the "mildly mentally retarded range of functioning." (rec. doc. 14, p. 6; Tr. 241). However, Dr. Greenway indicated that interviewing suggested somewhat higher adaptive skills, and that she "might more appropriately be considered Borderline Intellectual Functioning." (Tr. 241). He further noted that her personality profiles were invalid due to exaggeration of symptoms. Based on this evidence, the Appeals Council found no basis for changing the ALJ's decision. (Tr. 10-12). The undersigned agrees that the additional evidence would not have led to a different decision by the ALJ. *Newton*, 209 F.3d at 458. Thus, the ALJ's decision is entitled to deference.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR. *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed this 18th day of April, 2006, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

101 Fed.Appx. 950, 2004 WL 1372922 (C.A.5 (La.))
**(Cite as: 101 Fed.Appx. 950)**

**C**
Briefs and Other Related Documents
This case was not selected for publication in the Federal Reporter.Please use FIND to look at the applicable circuit court rule before citing this opinion. Fifth Circuit Rule 47.5.4. (FIND CTA5 Rule 47.)
United States Court of Appeals,Fifth Circuit.
Brandon WISE, Plaintiff-Appellant,
v.
Jo Anne B. BARNHART, Commissioner of Social Security, Defendant-Appellee.
No. 03-30995.
**Summary Calendar.**

Decided June 18, 2004.

**Background:** Applicant appealed decision by the Commissioner of Social Security denying his application for supplemental security income (SSI). The United States District Court for the Western District of Louisiana affirmed, and applicant appealed.

**Holdings:** The Court of Appeals held that:

1(1) even assuming that administrative law judge's (ALJ) hypothetical question posed to vocational expert was deficient, posing question was not reversible error, and

2(2) it was not necessary to remand case for ALJ to make a finding as to whether applicant could maintain employment.

Affirmed.

West Headnotes

**[1] Social Security and Public Welfare 356A◯➾ 145**

356A Social Security and Public Welfare
   356AII Federal Insurance Benefits in General
      356AII(C) Procedure
         356AII(C)3 Judicial Review
            356Ak145 k. Review in General. Most Cited Cases
Even assuming that administrative law judge's (ALJ) hypothetical question posed to vocational expert was deficient, posing question was not reversible error in proceeding on application for supplemental security income (SSI), where applicant's representative was afforded an opportunity to correct any perceived deficiencies.

**[2] Social Security and Public Welfare 356A◯➾ 145.5**

356A Social Security and Public Welfare
   356AII Federal Insurance Benefits in General
      356AII(C) Procedure
         356AII(C)3 Judicial Review
            356Ak145.5 k. Decisions Reviewable; Exhaustion of Administrative Remedies. Most Cited Cases

**Social Security and Public Welfare 356A ◯➾149**

356A Social Security and Public Welfare
   356AII Federal Insurance Benefits in General
      356AII(C) Procedure
         356AII(C)3 Judicial Review
            356Ak149 k. Determination, Findings, and Judgment. Most Cited Cases
Applicant who sought supplemental security income (SSI) did not assert that his condition only periodically precluded him from working and did not offer medical evidence that his condition would intermittently prevent him from maintaining employment or functioning in the employment context and, thus, it was not necessary to remand case for administrative law judge (ALJ) to make a finding as to whether applicant could maintain employment.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*951 Genia C. Lee, Lake Charles, LA, for
Plaintiff-Appellant.
Angeline Sue Johnson, Social Security
Administration, Office of General Counsel, Dallas,
TX, for Defendant-Appellee.

Appeal from the United States District Court for the
Western District of Louisiana, USDC No.
2:02-CV-1267.

Before JONES, BENAVIDES and CLEMENT,
Circuit Judges.

PER CURIAM:

> FN* Pursuant to 5th Cir. R. 47.5, the court
> has determined that this opinion should not
> be published and is not precedent except
> under the limited circumstances set forth in
> 5th Cir. R. 47.5.4.

**1 Brandon Wise appeals the judgment affirming
the decision by the Commissioner of Social Security
to deny his application for supplemental security
income. Our review is limited to determining
whether the Commissioner applied the proper legal
standards and whether the decision is supported by
substantial evidence on the record as a whole. *See
Bowling v. Shalala,* 36 F.3d 431, 434 (5th Cir.1994)
. We may not reweigh the evidence or try the
issues *de novo. See Johnson v. Bowen,* 864 F.2d
340, 343 (5th Cir.1988). The record shows that the
administrative law judge applied the proper legal
standards and that the Commissioner's decision is
supported by substantial evidence. *Bowling,* 36
F.3d at 434.

We reject Wise's challenge to the hypothetical
posed to the vocational expert. The hypothetical
question that an administrative law judge poses to a
vocational expert need only incorporate the
disabilities that the administrative law judge
recognizes. *Id.* at 435; *Morris v. Bowen,* 864 F.2d
333, 336 (5th Cir.1988). Under *Bowling,* if the
administrative law judge's hypothetical omits a
recognized limitation "and the claimant or his
representative is afforded the opportunity to correct
deficiencies in the administrative law judge's
question by mentioning or suggesting to the

vocational expert any purported defects in the
hypothetical questions (including additional
disabilities not recognized by the administrative law
judge's findings and disabilities recognized but
omitted from the question)," there is no reversible
error. *Bowling,* 36 F.3d at 436.

[1] Wise does not dispute that his representative
was allowed to cross-examine the vocational expert
regarding the administrative law judge's
hypothetical. Thus, even assuming, *arguendo,* that
the administrative law judge's hypothetical was
deficient in the respects urged on appeal, because
Wise's representative was afforded an opportunity
to correct any perceived deficiencies, there is no
reversible error. *See id.*

Contrary to Wise's argument, Social Security Ruling
(SSR) 83-12 does not contradict the vocational
expert's testimony that sedentary and light work
does not necessarily entail bilateral manual
dexterity. *See* SSR 83-12. Wise's argument that
SSR 83-12 undercuts the vocational expert's
testimony that he could perform sedentary work is
also without merit. SSR 83-12 does not state that a
person who does not exhibit bilateral manual
dexterity is unable to perform sedentary work. *Id.*

[2] To the extent that Wise argues that his case
should be remanded in accord with *Watson v.
Barnhart,* 288 F.3d 212 (5th Cir.2002), for a
finding whether he can maintain employment, Wise
did not assert that his condition only periodically
precluded*952 him from working and did not offer
medical evidence that his condition would
intermittently prevent him from maintaining
employment or functioning in the employment
context. Accordingly, it is not necessary to remand
the case for the administrative law judge to make
such a determination. *See Frank v. Barnhart,* 326
F.3d 618, 619-20 (5th Cir.2003). Given the
foregoing, the judgment of the district court is
affirmed.

**2 AFFIRMED.

C.A.5 (La.),2004.
Wise v. Barnhart
101 Fed.Appx. 950, 2004 WL 1372922 (C.A.5

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

101 Fed.Appx. 950, 2004 WL 1372922 (C.A.5 (La.))
**(Cite as: 101 Fed.Appx. 950)**


(La.))

Briefs and Other Related Documents (Back to top)

• 2004 WL 2681496 (Appellate Brief) Reply Brief
for Appellant (Feb. 18, 2004) Original Image of this
Document (PDF)
• 2004 WL 2681495 (Appellate Brief) Brief for
Appellee (Feb. 02, 2004) Original Image of this
Document (PDF)
• 2003 WL 23894425 (Appellate Brief) Brief for
Appellant (Dec. 30, 2003) Original Image of this
Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.